UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____  :
                                 :
UNITED STATES OF AMERICA         :
                                 :    Crim. No. 06-00076 (NLH)
                                 :
      v.                         :
                                 :
FRANCISCO MORALES,               :    **OPINION**
                                 :
          Defendant              :
_____  :

**<u>APPEARANCES</u>:**

JULIE A. MCGRAIN
FEDERAL PUBLIC DEFENDER'S OFFICE
800 - 840 COOPER STREET
SUITE 350
CAMDEN, NJ 08102

     *Counsel for Francisco Morales*

DIANA V. CARRIG
OFFICE OF THE US ATTORNEY
US POST OFFICE BUILDING
401 MARKET STREET
4TH FLOOR
CAMDEN, NJ 08101

     *Counsel for the United States*

**<u>Hillman</u>, District Judge**

     Before the Court is Francisco Morales's ("Defendant")

Motion for Reduction of Sentence under § 404(b) of the First

Step Act.  (ECF 403).  For the reasons expressed below,

Defendant's Motion will be denied.

**Background**

On November 19, 2007, Defendant entered a plea of guilty,
without the benefit or burden of a plea agreement, to a single
count of conspiracy to distribute 5 kilograms or more of cocaine
and 50 grams or more of cocaine base in violation of 21 U.S.C. §
846 and 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). (ECF 160, 296).
Using the United States Sentencing Guidelines effective November
1, 2007, the United States Probation Office ("Probation")
calculated Defendant's base offense level as a level 38 based on
the weight of the drugs involved.  United States Sentencing
Guidelines ("U.S.S.G.") § 2D1.1(c) (November 1, 2007).

As to drug weight, the Presentence Investigation Report
("PSR") did not find a finite amount either for powder cocaine
or cocaine base determining instead without objection that
Defendant along with his co-conspirators trafficked in
"hundreds, if not thousands" of kilograms of power cocaine, much
of which was cooked down into cocaine base, commonly known as
crack, although no similar characterization of the amount of
crack was attempted.  (See ECF 483 at 7, 27).

Under the 2007 version of the Guidelines, one earned a
level 38 - the highest base offense level - if the offense
involved 150 kilograms or more of cocaine.  U.S.S.G. §
2D1.1(c)(1) (November 1, 2007).  The PSR's finding that the

2

Defendant trafficked in at least 200 kilos of cocaine (i.e., "hundreds") easily satisfied the threshold amount for a level 38 and the parties agreed at sentencing that the conspiracy involved both more than 150 kilos of power and 4.5 kilos of crack cocaine. After other adjustments, Probation calculated an advisory guideline range of 324 to 405 months after concluding Defendant's criminal history category was Category III and his adjusted offense level was 39.[1]

Thereafter, on July 22, 2008, the Court sentenced Defendant to 300 months of imprisonment and a 5-year term of supervised release. (ECF 296). The sentence reflected a two-year downward variance from the bottom of the advisory guideline range of 324 months. (See ECF 297 at 29: 1-4).

On August 3, 2010, the Fair Sentencing Act (the "FSA") was enacted to reduce the disparity between statutory penalties for trafficking crack cocaine and powder cocaine. Pub. L. No. 111-220, 124 Stat 2372 (2010). The FSA also raised the drug quantities required to trigger certain minimum penalties pursuant to 21 U.S.C. § 841, the statute under which Defendant was convicted. See United States v. Ferrer, 859 F. App'x 648,

---

[1] Probation added 4 points to the base offense level because Defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, U.S.S.G. § 3B1.1(a), and subtracted three points for Defendant's acceptance of responsibility, U.S.S.G. § 3E1.1(a) and (b), for a total of 39 (38 + 4 − 3 = 39). (See ECF 483).

649 (3d Cir. 2021) ("The Fair Sentencing Act raised the drug-
quantity thresholds needed to trigger certain mandatory-minimum
sentences.").

In addition to the statutory changes to the Controlled
Substances Act ("CSA") the FSA also had a cascading effect on
the Drug Quantity Table found in the sentencing guideline
section applicable to CSA offenses, U.S.S.G. § 2D1.1(c).
Because the ratio between crack and powder cocaine was reduced,
it required a larger amount of crack cocaine to raise any given
base offense level.  For example, under the November 2010
Guidelines an amount of 8.4 kilos of crack triggered the highest
offense level of 38 whereas under the 2007 Guidelines only 4.5
kilos of crack was required.

Significantly, as relevant to this case, the FSA had no
effect on the amount of powder cocaine required to trigger the
various base offense levels.  This is because in order to reduce
the ratio between powder and crack the amount of crack to
trigger statutory penalties increased while the amount of powder
remained the same.  The United States Sentencing Commission
amended the Sentencing Guidelines to reflect the FSA in November
2010.[2]  After the FSA, as before, the highest base offense level

---

[2] U.S.S.G., Appendix C, Amendment 748.  The November 2010
repromulgation of the guidelines was temporary and was made
permanent in November 2011 with Amendment 750.  U.S.S.G.,
Appendix C, Amendment 750.

of 38 applied when the drug weight of powder cocaine was 150 kilos or more.  Compare U.S.S.G. § 2D1.1(c)(1) (November 1, 2007) with U.S.S.G. § 2D1.1(c)(1) (November 1, 2010).

Then in 2014, the United States Sentencing Commission promulgated Amendment 782 which retroactively reduced by two levels the base offense levels assigned to many drug quantities set forth in the Drug Quantity Table of U.S.S.G. § 2D1.1(c). United States v. Thompson, 825 F.3d 198, 202 (3d Cir. 2016). One effect of this downward adjustment was an increase in the amount of power cocaine that triggered the highest base offense level of 38 in the following way.  Since the quantities for a level 38 after Amendment 782 would be a level 36 in light of the two level downward adjustment, level 36 - not the highest level – would require a range which the Sentencing Commission determined for power cocaine to be 150 to 450 kilos. Accordingly, moving up the Drug Quantity Table, 450 kilos became the minimum amount to trigger the highest level 38 with no upper limit required.  Compare U.S.S.G. § 2D1.1(c)(1) and (2) (November 1, 2013) with U.S.S.G. § 2D1.1(c)(1) and (2) (November 1, 2014).

Defendants seeking a reduction in sentence on the basis of Amendment 782 may file a motion under 18 U.S.C. § 3582(c)(2). Thompson, 825 F.3d at 200.  Defendant moved for such a reduction on July 15, 2015.  (ECF 387).  The record reflects that Probation recommended that Defendant receive a reduction of his

guidelines range in light of Amendment 782 from 324 to 405 months to 262 to 327 months based on a reduction in the base offense level from a 38 to a 36.  Id. at 5.  Defendant in his motion noted that no specific finding of the amount of powder or crack involved had been made at the original sentencing,[3] the parties having previously agreed that the threshold for the highest level based on the enormous amount to powder cocaine had been met at the time, and arguing in the motion for an Amendment 782 reduction, somewhat summarily, that the Defendant was entitled to the reduction. (Id. at 4-5).

The record regarding the adjudication of the motion is somewhat sparse as the resentencing was not a plenary hearing. The Hon. Joseph E. Irenas, the judge assigned to the matter at the time, simply indicated in a short Opinion issued October 13, 2015 that the Government, while opposing the motion, did not offer any objection to the recalculated range, (ECF 390), and

---

[3] The Defendant did not acknowledge the finding of "hundreds, if not thousands" of kilos of powder but did note that if the case had merely involved crack cocaine the new base offense level would be a level 34 in the absence of a finite amount since the agreement as to "at least 4.5 kilos" of crack was now in the 2014 version of the Guidelines in the middle of level 34's range for crack of 2.8 to 8.4 kilos, a reduction occasioned by the combined effect of Amendment 782 and the FSA.  The Defendant acknowledged nonetheless that given the agreement as to the amount of powder cocaine involved, Probation's calculation of a level 36 was correct. (ECF 387 at 5 n.3.)

accepting Probation's new Adjusted Offense Level of 37,[4] resentenced the Defendant to the very bottom of the recalculated advisory sentencing range, a sentence of 262 months.  (ECF 391).

On December 21, 2018, Congress passed the First Step Act ("First Step Act") which, among other things, in its Section 404 made the provisions of the FSA fully retroactive.  Pub. L. No. 115-391, 132 Stat. 5194 (2018); Concepcion v. United States, 213 L. Ed. 2d 731, 142 S. Ct. 2389, 2397 (2022).  Subject to limitations set forth in Section 404(c) of the First Step Act, Section 404(b) states:

> (b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

Id.

Relevant to the instant motion, Section 404(c) places limitations on such motions:

> (c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced

---

[4] As before, Probation added 4 points to the base offense level because Defendant was a an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, U.S.S.G. § 3B1.1(a) and subtracted three points for Defendant's acceptance of responsibility, U.S.S.G. § 3E1.1(a) and (b), this time for a total of 379 (36 + 4 – 3 = 37).

in accordance with the amendments made by sections 2
and 3 of the Fair Sentencing Act of 2010 (Public Law
111-220; 124 Stat. 2372) or if a previous motion made
under this section to reduce the sentence was, after
the date of enactment of this Act, denied after a
complete review of the motion on the merits.  Nothing
in this section shall be construed to require a court
to reduce any sentence pursuant to this section.

Id.

Thus a plain reading of § 404(c) bars a Section 404(b)

motion in at least three instances: 1) where a previous Section

404(b) motion was made and denied; 2) where a previous sentence

was imposed in accordance with the FSA; and 3) where a sentence

was previously reduced in accordance with the FSA.

The Defendant filed the instant motion seeking a reduction

in sentence based on § 404(b) on April 23, 2019.  (ECF 403).

The Government opposed the motion on November 4, 2019 (ECF 418)

and Defendant filed a reply brief on November 22, 2019 (ECF

421).  The parties also filed several letters updating their

positions between late 2019 and early 2022.  (ECF 423, 426, 430,

432, 434, 435, 437, 439, 440, 443, 446, 451, 452, 453).

Thereafter, due to the Government's abandonment of an

appeal in a different matter that addressed issues salient to

the instant motion, the Court ordered the parties to submit

further briefing clarifying their positions.  (ECF 460).  The

Government and Defendant filed their further submissions on May

16, 2022 and May 20, 2022, respectively.  (ECF 461, 464).  Of

note, the Government conceded that Defendant was convicted of a "covered offense," removing that bar precluding review in this Court.  (ECF 461).

Then, on June 27, 2022, the Supreme Court issued an opinion in Concepcion v. United States, 213 L. Ed. 2d 731, 142 S. Ct. 2389, 2397 (2022) in which the Court held that a court resentencing a defendant pursuant to retroactive application of the FSA should first calculate the Guidelines with the only difference "to reflect the retroactive application of the Fair Sentencing Act."  Id. at 2402 n.6.  The Supreme Court further directed that once a sentencing court recalculates the Guidelines, it may "then consider postsentencing conduct or nonretroactive changes in selecting or rejecting an appropriate sentence, with the properly calculated Guidelines range as the benchmark."  Id.

In light of that holding, on June 28, 2022, this Court issued an order requiring the United States Probation Office ("Probation") to prepare an addendum to Defendant's pre-sentence report consistent with Concepcion.  (ECF 467).  The Court also ordered the parties to file further briefing once Probation submitted its addendum to advise the Court on their respective

positions on how the Court should resolve Defendant's motion.
(Id.)

On September 22, 2022, Probation filed its addendum, which
calculated Defendant's Guidelines range for any resentencing the
Court might impose now to be the same as it was at the time of
his 2015 resentencing. (ECF 483 at 30-32 ("Given the Court's
original finding that the drug quantities in this matter were
'in the thousands of kilograms,' the Total Offense Level as
determined under the Guidelines were they to be recalculated
today would appear to remain 37 (which includes consideration
for the 'Minus 2').")).

Indeed, in 2015, the Court calculated that Defendant's
offense level as a result of Amendment 782 would be 37. (Id. at
37; ECF 390, 391). In the Addendum, Probation noted that, when
taking into account only the changes occasioned by the FSA, the
offense level would still be 37. (ECF 483 at 32).[5] Stated
differently, Probation concluded that Defendant's advisory
Guidelines did not change as a result the First Step Act's
authorization to apply the FSA retroactively. Thereafter, on
October 3, 2022, Defendant filed a letter expounding on his

---

[5] The Addendum also states that there would be no change to
Defendant's criminal history category as compared to how it was
originally calculated. (Id. at 20, 32).

position.[6]  (ECF 486).  The Court considers the motions against this factual and procedural backdrop.

**Discussion**

    **A. Legal Standard for Reduction of Sentence Per the FSA**

    A court that has sentenced a defendant for a "covered offense" prior to the enactment of the FSA may resentence a Defendant in accordance with the FSA's penalty changes by virtue of § 404(b) of the First Step Act.  See United States v. Easter, 975 F.3d 318, 323 (3d Cir. 2020) (abrogated on other grounds by Concepcion, 142 S.Ct. 2398 n.2) (discussing motions made under § 404(b)).  If the Court determines that a defendant is eligible for relief under § 404(b) the First Step Act (and not excluded under § 404(c)), the Court must then also analyze such a motion under the sentencing factors set forth in 18 U.S.C. § 3553(a). Id. at 326 ("Accordingly, we hold that when deciding whether to exercise its discretion under § 404(b) of the First Step Act to reduce a defendant's sentence, including the term of supervised release, the district court must consider all of the § 3553(a) factors to the extent they are applicable.").

    A court may only consider changes in facts that go to the § 3553(a) factors that were not in play at the time of original sentencing.  United States v. Murphy, 998 F.3d 549, 555 (3d Cir.

---

[6] The Government was also invited to file further briefing after the submission of the addendum, (ECF 467), but did not do so.

2021), as amended (Aug. 4, 2021) (abrogated on other grounds by
Concepcion, 142 S.Ct. 2398 n.2) ("This new assessment must
include any new, relevant facts that did not exist, or could not
reasonably have been known by the parties, at the time of the
first sentencing (*e.g.*, a defendant's post-sentencing
rehabilitation or new health problems)."). This is because, a §
404 motion is not a license for a district court to reassess its
original sentencing determinations. Id. ("[T]he resentencing
court cannot reach beyond [facts that could not have been known
at the original sentencing or post-sentencing developments] to
reconsider the facts as they stood at the initial sentencing.").

In going about this analysis using the above standard, a
sentencing court has a wide range of discretion to consider
post-sentencing circumstances and "[t]he only limitations on a
court's discretion to consider any relevant materials . . . in
modifying that sentence are those set forth by Congress in a
statute or by the Constitution." Concepcion, 142 S. Ct. at
2400. In the case of the First Step Act, no additional
limitations are in play. Id. at 2402 ("Section 404(b) does not
erect any additional such limitations. The term 'as if' simply
enacts the First Step Act's central goal: to make retroactive
the changes in the Fair Sentencing Act."). By the same token, a
district court also is not required to modify a sentence even if
it is empowered to do so under the First Step Act. Id. ("In

12

fact, § 404(c) only underscores that a district court is not required to modify a sentence for any reason.").

In sum, for those who qualify for consideration of a reduction under § 404(b) the process for determining whether a defendant should receive a sentence reduction under the First Step Act contains two steps.  United States v. Shields, 48 F.4th 183, 192 (3d Cir. 2022).  First, "the District Court should start with the benchmark Guidelines range recalculated only to the extent it adjusts for the Fair Sentencing Act[.]"  Id.  Then, the sentencing court may consider other post-sentencing developments that warrant consideration.  Id.; Concepcion, 142 S. Ct. at 2402 n.6. ("The district court may then consider postsentencing conduct or nonretroactive changes in selecting or rejecting an appropriate sentence, with the properly calculated Guidelines range as the benchmark.").

**B. Analysis**

The parties agree that Defendant's conviction for a multi-object drug conspiracy offense involving both crack and powder cocaine is a "covered offense" for purposes of § 404(b) and he is thus eligible for consideration for relief.[7]  (ECF 403, 461).

---

[7] The Third Circuit has not yet spoken directly on whether a defendant sentenced for a dual object conspiracy, such as conspiracy to possess with intent to distribute both powder cocaine and crack cocaine, is eligible for a reduction of sentence under the FSA where the sentence originally imposed would be consistent with a sentence imposed today when taking

The government argues, among other things, that Defendant is barred for consideration under § 404(c).  (ECF 435 at 4).  They also differ on the issue of whether the Court should exercise its discretion to grant such a reduction in sentence if the Defendant is not ineligible and not barred by the First Step Act's exclusions.  They each advance their own arguments about how the Court should view the § 3553(a) factors today.

Defendant argues that his personal growth while in prison, his age, and his goals for the future support his application. (ECF 403 at 8).  He more broadly argues that the Court should schedule a resentencing hearing at which time he could present evidence on why the § 3553(a) factors have changed in his favor. (ECF 421 at 5).  Defendant acknowledges that at the time he was sentenced he "was actively involved in an expansive drug conspiracy dealing large quantities of crack and powder

---

into the consideration the current guidelines for powder cocaine.  However, the Circuits that have opined on the issue of eligibility of defendants convicted of dual object conspiracies have held that such a defendant would be eligible for a reduction of sentence under the FSA.  See United States v. Gravatt, 953 F.3d 258 (4th Cir. 2020); United States v. Taylor, 982 F.3d 1295, 1301 (11th Cir. 2020); United States v. Winters, 986 F.3d 942 (5th Cir. 2021); United States v. Spencer, 998 F.3d 843 (8th Cir.), cert. denied, 141 S. Ct. 2715, 210 L. Ed. 2d 878 (2021); United States v. Reed, 7 F.4th 105 (2d Cir. 2021); United States v. McSwain, 25 F.4th 533 (7th Cir. 2022).  Here, the Government appears to concede the point at least in this case.  (ECF 461 at 1).

cocaine." (Id. at 12).  He also acknowledges that that he had
"several prior convictions for drug distribution."  (Id.)

However, he argues that in light of the fact that he has
already served almost 17 years of his sentence, his risk of
recidivism is low.  (ECF 486 at 2).  He argues that studies show
that sentences over 10 years provide diminishing returns.  (ECF
403 at 12-13).  He states that since being in prison he has
focused on rehabilitative programming and has received his GED.
(ECF 483 at 2).  He also highlights his clear conduct record and
his strong relationship with his family.  (Id.).  Finally, he
emphasizes the fact that he has a promise of job lined up upon
his release with Jersey Fresh Cleaning Pros, LLC.  (Id.)

The Government contends that the § 3553(a) factors lean the
other way.  They ask that the Court consider the fact that
Defendant managed and helped lead a large violent drug
trafficking conspiracy for more than a decade.  (ECF 418 at 8;
ECF 461 at 2).  They urge the Court to consider the fact that
Defendant was not deterred by two prior drug trafficking
convictions and the fact that he "saw firsthand the violence
inherent in Camden's drug trafficking, and still he continued to
traffic." (ECF 418 at 8).  Specifically, they recount how
Defendant helped cover up a murder relating to the drug
trafficking organization that he helped to run.  (ECF 461 at 2).
They finally contend that Defendant is not entitled to a

resentencing hearing under the First Step Act.   (ECF 418 at 8-10).

The Court concludes that while Defendant was convicted of a covered offense, he is nonetheless ineligible for a reduction in sentence under § 404(c) as a result of his resentencing in 2015 which took into account the changes mandated by the FSA.   As explained below, since Defendant was sentenced "in accordance" with the FSA he is afforded no additional relief under the First Step Act.

Those circuits which have opined on this issue are split. Compare United States v. Hinds, 713 F.3d 1303, 1305 (11th Cir. 2013) (holding that the FSA applies to a defendant originally sentenced before the passage of the FSA but resentenced afterward); United States v. Alston, 722 F.3d 603, 608 (4th Cir. 2013) (same); with United States v. Hughes, 733 F.3d 642, 647 (6th Cir. 2013) (holding that the FSA does not apply to a defendant originally sentenced before the passage of the FSA but resentenced afterward); Lightfoot v. United States, 831 F. App'x 145 (5th Cir. 2020) ("Because a reduction under Amendment 782 is not a reduction in accordance with sections 2 and 3 of the Fair Sentencing Act, that prior reduction does not bar the district court's consideration of Lightfoot's motion.") (internal citations omitted); United States v. McDonald, 944 F.3d 769, 772 (8th Cir. 2019) ("[W]hen the district court reduced

16

McDonald's sentence in 2016, it did not do so in accordance with the Fair Sentencing Act; it instead relied on Amendment 782[.]").

Though the Third Circuit has issued various opinions sketching out the parameters of the First Step Act, it has yet to opine on the specific issue of whether a Defendant resentenced after the passage of the FSA, even if not resentenced explicitly pursuant to that Act, but under guidelines which reflect the changes brought about by that statute, is barred from seeking a sentence reduction under § 404(c).[8]  Therefore, the Court will undertake its own analysis of § 404(c) based on the statutory text and authority it finds persuasive from outside this Circuit.

---

[8]  However, the Third Circuit made statements in dicta that would be consistent with a conclusion that defendants who received sentence reductions under Amendment 782 have effectively already received the benefit of the First Step Act.  United States v. Jackson, 964 F.3d 197, 205 (3d Cir. 2020) ("Congress passed the First Step Act at a time when some, but not all, pre-Fair Sentencing Act inmates had already received relief by reference to their offense conduct through application of the post-Fair Sentencing Act amendments to the U.S. Sentencing Guidelines. Since the First Step Act would have a minimal impact on inmates who had previously benefited via the Guidelines, Congress's intent must have been to afford relief to other pre-Fair Sentencing Act offenders, including those who were heretofore ineligible.")(internal alterations and citations omitted).  The Third Circuit's statement here was made in the context of deciding whether the quantity of drugs actually possessed by a defendant or the statute of conviction controlled eligibility under the First Step Act.  Jackson does not directly address § 404(c) in the context now before this Court.

As quoted above § 404(c) of the First Step Act states, in part, that "No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010." Pub. L. No. 115-391, 132 Stat. 5194 (2018).  The question presented is how to interpret "in accordance with."  The Fourth Circuit has construed "in accordance with" to simply mean "consistent" rather than something like "pursuant to."  United States v. Goodwin, 37 F.4th 948, 954 (4th Cir. 2022) ("Accordingly, we find that Goodwin's sentence 'was previously imposed ... in accordance' with the relevant provisions of the Fair Sentencing Act and that § 404(c) of the First Step Act therefore renders him ineligible for relief.").

As stated above, the Third Circuit has yet to opine on this issue directly, but this Court finds the Fourth Circuit's reasoning persuasive and adopts its reasoning here.  The plain language of the statute compels the conclusion that § 404(c) seeks to bar not only those cases seeking a reduction after a sentence previously reduced under the First Step Act but also those cases in which the sentencing court utilized the amended guidelines put into place after the FSA was passed whether that sentencing was imposed or reimposed after the effective date of the Act.  That is to say that the statutory language of § 404(c)

18

appears to act as a bar for both types of "second bites at the apple": those cases originally sentenced using pre-FSA guidelines who previously moved and were considered for relief under § 404(b) and those cases sentenced after the guidelines were amended in response to the FSA.

It is only this interpretation that gives separate meaning to the separate phrases "previously imposed or previously reduced[.]" United States v. Cooper, 396 F.3d 308, 312 (3d Cir. 2005), as amended (Feb. 15, 2005)(emphasis added)("It is a well known canon of statutory construction that courts should construe statutory language to avoid interpretations that would render any phrase superfluous."). If Congress had intended to bar only those who had previously sought relief under the First Step Act, the "previously imposed" language would be meaningless. The plain language of the statute reflects a Congressional intent to bar uniformly defendants from receiving the benefits of the FSA twice.

This interpretation also prohibits unwarranted sentencing disparity, a key goal of the sentencing statute, 18 U.S.C. § 3553(g), by ensuring that defendants sentenced both before and after the FSA are considered under like guidelines. This consistency appears to be the apparent statutory goal § 404(b) of the First Step Act to eliminate the disparity caused by the FSA's initial lack of retroactivity. Accordingly, this Court

holds that since the Defendant was resentenced pursuant to
Amendment 782, using Guidelines that also reflected the reforms
of the FSA, he is barred from further relief under the plain
language of § 404(c) of the First Step Act.

The Court hastens to add that if its interpretation of §
404(c) is in error, however, it would exercise its discretion to
deny Defendant relief after consideration of the 3553(a)
factors. [9] As explained above, the Court weighs the factors as
they stand today, but does not "reach beyond those circumstances
to reconsider the facts as they stood at the initial
sentencing." Murphy, 998 F.3d at 555.

First, in 2015, Judge Irenas applied an Amendment 782
reduction to Defendant's sentence, lowering it from 300 months
to 262 months.  (ECF 418 at 2).  Notably, 262 months is what the
bottom of the Guidelines range would be if Defendant were
sentenced today with the FSA in place.[10]  (ECF 483 at 31-32).
The Court finds that the § 3553(a) factors do not counsel
further reducing Defendant's sentence.

---

[9]  The Court will deny Defendant's request for a hearing on this
motion, (ECF 403 at 6), as the Third Circuit has made clear that
it is not required.  Easter, 975 F.3d 318, 326 (3d Cir. 2020)
("Easter is not entitled to a plenary resentencing hearing at
which he would be present.").

[10]  UNITED STATES SENTENCING COMMISSION, CHAPTER FIVE – DETERMINING THE
SENTENCE, https://guidelines.ussc.gov/chapters/5/parts (last
visited December 2, 2022).

Second, this Court is not free to reweigh the factors in play at the time of the original sentencing. Murphy, 998 F.3d at 555. After carefully parsing the factors at Defendant's original sentencing, Judge Irenas stated, "It's clear to me that a stiff, stiff sentence is required." (ECF 297 at 62:8-9). Specifically, Defendant was involved in a serious drug trafficking conspiracy for over a decade and was well aware of how the drug trade fomented violence and harmed the people of Camden. (Id. at 55:7-9 ("[Y]ou enabled a violent dangerous business to thrive and flourish, as I say, in a poor forsaken city.")); 18 U.S.C. § 3553(a)(1). Indeed, Defendant occupied a leadership role in a large drug trafficking organization that involved getting drugs from places like Mexico and Colombia and getting them to the streets. (ECF 297 at 53:22- 54:3). Today, the crime that Defendant committed is no less serious than it was at the time of sentencing. 18 U.S.C. § 3553(a)(2)(A).

Also, key at his original sentencing was the fact that Defendant had no employment history, having been a drug dealer since his late teen years, and did not have a history of supporting his children. (ECF 297 at 56:22- 57:3, 60:23- 61:2); 18 U.S.C. § 3553(a)(1). The Court has reviewed the letters from Defendant's family, responsible members of the community, stating that they see a change in him and that he has made an effort to remain a positive part of his children's lives since

21

his incarceration, (see ECF 423, 426), and though it finds that laudable, it is insufficient to warrant a further sentence reduction when one considers the societal harm, including harm to families and children, Defendant's drug trafficking no doubt caused.

The Court accepts as a general proposition that recidivism tends to decrease with age but Judge Irenas knew his sentence would be long.  The Defendant had not been deterred by shorter state sentences and there was, and remains, an overarching need to send a strong message to the Defendant and to others that might be tempted to engage in the same conduct that this kind of criminal activity that poisons a community will not be tolerated.  18 U.S.C. § 3553(a)(2)(B).  Further, given the fact that Defendant had repeatedly returned to the drug trade after incarceration and the fact that Defendant had no employment history, the Court still finds that protecting the public from further crimes of Defendant also is a notable factor here.  Id. at § 3553(a)(2)(C).  While his plans for future employment are encouraging, there is little in the record to suggest that the need to protect the public has diminished since Defendant was last sentenced.

The Court also credits Defendant for earning his GED while incarcerated, but Judge Irenas already considered that fact at the time of his original sentencing. (ECF 297 at 60:13-17

22

("Well, he got a GED; well, half the people who go in get GEDs. Which in fact it's a great incentive in prison to get a GED. And I'm not criticizing, I'd make them all do it, I'm certainly in favor of getting a GED, don't get me wrong, very much in favor of it.")).

Finally, given that Judge Irenas already decreased Defendant's sentence to the bottom of the Guidelines range in 2015, the Court finds, as noted above, that a further reduction in the length of his sentence would result in "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]" 18 U.S.C. § 3553(a)(6).

**Conclusion**

For the reasons set forth above, Defendant's Motion for Reduction of Sentence under § 404(b) of the First Step Act (ECF 403) will be denied.

An accompanying Order will issue.


Dated: <u>December 15, 2022</u>          s/   Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.